IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

DANTE R. VOSS,

               Plaintiff,

  v.

KEVIN A. CARR,

               Defendant.

OPINION and ORDER

19-cv-790-jdp

---

Pro se plaintiff Dante Voss has filed an amended complaint as directed by the court. In his original complaint, Voss raised three claims: (1) defendant Kevin Carr, the secretary of the Wisconsin Department of Corrections (DOC), denied his right to have access to the courts by implementing a policy regarding legal loans that prevented Voss from filing a lawsuit in state court; (2) Carr's policy is denying his right to have access to the courts now by failing to give him legal loans necessary to litigate his pending cases; and (3) Carr's policy violates the Equal Protection Clause because it reduces a prisoner's legal loan limit from $100 to $50 if the prisoner hasn't repaid legal loans from previous years.

I dismissed the first two claims without prejudice because Voss didn't provide fair notice of his claims, but I gave him an opportunity to file an amended complaint to provide more information. I dismissed the equal protection claim with prejudice because the policy he was challenging has a rational basis and thus did not violate the Equal Protection Clause.

In response, Voss filed a 36-page amended complaint that goes far beyond what I asked him to do. His amended complaint now includes many additional claims. Instead of just challenging the legal loan policy, he now contends that DOC's policy regarding use of the law library, the Wisconsin open records law, and the statutory requirement to serve a notice of

claim by certified mail all violate both the constitutional right to have access to the courts and the right to equal protection of the law. For the reasons discussed below, all of these challenges fail, and I will dismiss the case for Voss's failure to state a claim upon which relief may be granted.

ANALYSIS

A. Access to courts

To succeed on an access-to-courts claim, a plaintiff must show that he was, or is, suffering an "actual injury" by being "frustrated" or "impeded" in bringing a non-frivolous claim about his criminal conviction, sentence, or conditions of confinement. *Lewis v. Casey*, 518 U.S. 343, 353–55 (1996). Voss contends that DOC's legal loan policy, its refusal to identify the names of correctional officers, and its policy governing the amount of time that prisoners are allowed in the law library violate his right his right to have access to the courts. He says that defendant Carr can be held liable for each violation, either because he is responsible for the policy at issue or because he affirmed a grievance in which Voss complained about the policy at issue.

  1. **Refusal to grant legal loan extensions**

Voss challenges the constitutionality of DOC's legal loan policy, DAI Policy 309.51.01, as it has been applied to him. He doesn't describe the policy in detail, but he says that it allows indigent prisoners to borrow up to $100 a year for legal expenses, but only if they have paid off the previous year's legal loan. Prisoners like Voss who have not repaid their loans are capped at $50. He says that the monetary cap has denied his access to courts in the following ways:

>  1) **Dismissal of state court lawsuit.** In No. 19-cv-387, filed in Dane County Circuit Court, Voss alleged that prison staff violated his right to privacy under

2

Wis. Stat. § 995.50 by opening mail from the state public defender's officer and his criminal attorney outside his presence. The court dismissed the lawsuit in part because Voss failed to comply with Wis. Stat. § 893.82(5), which requires a notice of claim to be served by certified mail. Voss says that he couldn't comply with § 893.82(5) because his request for a legal loan extension was denied.

2) **Preventing him from filing a state court privacy lawsuit**. Voss says that he wanted to file a lawsuit in state court that prison staff violated Wis. Stat. § 995.50 by opening mail from his daughter's therapist outside his presence. Voss never filed a lawsuit raising that claim, but he says that it would have been futile to do so because he had not complied with the requirements to serve the notice of claim by certified mail. He didn't serve the notice of claim by certified mail because he didn't have the funds to do so and his request for a legal loan extension was denied.

3) **Preventing him from filing petitions for writs of certiorari**. Voss says that he wanted to challenge three conduct reports he received for being late to his prison job. He never filed those petitions because he was unable to obtain legal loan extensions before the 45-day deadline for filing a petition for a writ of certiorari. *See* Wis. Stat. 893.735.

4) **Preventing him from litigating pending case.** In *Voss v. Marathon County*, No. 18-cv-540-jdp (W.D. Wis.), Voss is challenging the medical care he received in the Marathon County and Lincoln County jails between 2015 and 2016. He says that he has been unable to conduct discovery because his requests for legal loans are being denied.

a. Scope of the right

All of these claims suffer from multiple problems. But the common problem is that they are premised on a view that Voss is entitled to unlimited financial assistance to prosecute as many lawsuits as he wants about anything that happens to him in prison. That is incorrect. "Prison officials have an affirmative duty to provide inmates with reasonable access to courts," but "reasonable access does not mean unlimited access." *Martin v. Davies*, 917 F.2d 336, 338 (7th Cir. 1990).

In the context of financial assistance, the Court of Appeals for the Seventh Circuit has put it bluntly: a prisoner "has no constitutional entitlement to subsidy to prosecute a civil suit." *Johnson v. Foster*, 786 F.3d 501, 506–07 (7th Cir. 2015) (quoting *Lindell v. McCallum*, 352 F.3d

3

1107, 1111 (7th Cir. 2003)). In *Johnson*, a Wisconsin prisoner was seeking habeas relief, but he filed his petition without first seeking relief from the state supreme court, as he was required to do. He blamed prison officials for failing to give him the legal loans necessary to file an appeal, but the court said that didn't provide good cause for the procedural default because he didn't have a right to the loan. *Id.* at 506–07. In *Lindell*, the court considered the rights of another Wisconsin prisoner who had exhausted his legal loans. 352 F.3d at 1111. The court said that "there is no possibility that [the district court will] have to order Wisconsin to lend [the prisoner] a penny" because the amount of legal loans Wisconsin provides is "a matter strictly between [the prisoner] and Wisconsin, and not any business of the federal courts." *Id.*

*Johnson* and *Lindell* could be read to mean that a refusal to provide a legal loan is never a violation of the right to have access to the courts. But prisoners do have a limited right to basic legal supplies, *Bounds v. Smith*, 430 U.S. 817, 825 (1977), including postage, *Ripp v. Nickel*, 838 F. Supp. 2d 861, 866 (W.D. Wis. 2012), and Voss says that a legal loan is the only way that an indigent prisoner can obtain postage and other supplies, Dkt. 18, ¶ 21. *See also Owens v. Evans,* 878 F.3d 559, 564 (7th Cir. 2017) (declining to decide whether refusal to provide legal loan for serving pleadings and summonses to nongovernmental defendants violated right to have access to courts).

Voss doesn't explain why he needed a legal loan to challenge his conduct reports. *See* Wis. Stat. § 814.29 (allowing indigent litigants, including prisoners, to file complaints without prepaying the filing fee). And he is vague about how he wants to use a legal loan to conduct discovery in No. 18-cv-540-jdp. But some of his claims relate to his inability to serve a notice of claim by certified mail, which could fall within the scope of *Bounds*. But even if the court of appeals would recognize an exception to *Johnson* and *Lindell* for legal loans used to purchase

4

postage, and even if some of Voss's requested legal loans would fit within that exception, it is well established that "prisoners are not entitled to limitless supplies of [mailing and other basic scribe] materials"; rather, they are entitled "to that amount minimally necessary to give them meaningful access to the courts." *Gentry v. Duckworth*, 65 F.3d 555, 558 (7th Cir. 1995).

In this case, Voss doesn't allege that the legal loan policy excludes loans for certified mail. Rather, he says that he ran out of legal loans to pay for certified mail because he had used his loans for other cases. In fact, Voss acknowledges in his complaint that he is currently litigating *nine* separate cases. Dkt. 18, ¶ 149. Voss cannot plausibly contend that he is entitled to more than that. The court of appeals made it clear in *Johnson* and *Lindell* that, "like any other civil litigant, [an inmate] must decide which of his legal actions is important enough to fund." *Johnson*, 786 F.3d at 507 (quoting *Lindell*, 352 F.3d at 1111). Voss has failed to heed that warning, so he is not entitled to relief from this court.

Even if the court were to assume that Voss had the right to obtain legal loans to file an unlimited number of lawsuits, I would conclude that he has failed to state a claim for other reasons.

   b. **Dismissal of state court lawsuit**

In the case dismissed by the state court, Voss was asserting claims that prison staff violated his state-law right to privacy under Wis. Stat. 995.50 by opening letters from his criminal defense attorney and the state law public defender. He doesn't identify the contents of either letter, he doesn't say whether the alleged conduct was intentional or negligent, and he doesn't allege that prison staff or anyone else used the information in the letters to harm him.

5

The claims in the state court lawsuit don't fall within the right to have access to the courts for two reasons. First, "the tools [the right to have access to the courts] requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Lewis*, 518 U.S. at 355. Although that language could be read to encompass any claim by a prisoner expressing dissatisfaction with his treatment in prison, many courts have held that *Lewis* applies only to habeas and civil rights claims, *not* to state-law tort claims. *See, e.g., Bryant v. Karlow,* 523 F. App'x 476 (9th Cir. 2013); *Thaddeus*-X v. Blatter, 175 F.3d 378, 391 (6th Cir. 1999); *Elmore v. Cooper*, No. CIV.A. CV508-004, 2009 WL 2525261, at *4 (S.D. Ga. June 3, 2009), *Ross v. Sandoval*, No. 217CV02386APGGWF, 2017 WL 6000342, at *11 (D. Nev. Dec. 4, 2017). *See also Snyder v. Nolen,* 380 F.3d 279, 290–91 (7th Cir. 2004) ("[I]n order to assure that incarcerated persons have meaningful access to courts, states are required to provide affirmative assistance in the preparation of legal papers in cases involving constitutional rights and other civil rights actions related to their incarceration." (quoting *John L. v. Adams*, 969 F.2d 228 (6th Cir. 1992)). I agree with that view.

Second, the right doesn't extend to frivolous claims, so to state a claim, "the predicate claim [must] be described well enough to apply the 'nonfrivolous' test and to show that the 'arguable' nature of the underlying claim is more than hope." *See Christopher v. Harbury,* 536 U.S. 403, 416 (2002). In the order dismissing Voss's original complaint without prejudice, I concluded that Voss hadn't complied with the requirement in *Christopher* because he hadn't

provided enough information, either about the legal basis of his underlying claims or the facts supporting those claims.

In his amended complaint, Voss still doesn't explain the legal basis for his claim except to cite § 995.50. That statute lists four different kinds of invasion of privacy, none of which Voss cites in his complaint. Two of the four clearly do not apply. *See* Wis. Stat. § 995.50(2)(am)(2) (use of plaintiff's likeness for advertising); *id.*, § 995.50(2)(am)(4) (nude representations of the plaintiff). This leaves § 995.50(2)(am)(1), which prohibits invasions of privacy that are "highly offensive to a reasonable person, in a place that a reasonable person would consider private or in a manner which is actionable for trespass" and § 995.50(2)(am)(3), which prohibits "[p]ublicity given to a matter concerning the private life of another" under certain circumstances. But § 995.50(2)(am)(1) applies only to invasions of "geographical" places; it doesn't apply to the review of confidential documents. *Hillman v. Columbia Cty.*, 164 Wis. 2d 376, 392, 474 N.W.2d 913, 919 (Ct. App. 1991). And § 995.50(2)(am)(3) applies only when the defendant discloses private facts to third parties, *Hillman*, 164 Wis. 2d. at 393–95, 474 N.W.2d at 919–20, something Voss doesn't allege. So I see no legal basis for Voss's invasion of privacy claim. Because his claim was frivolous, it isn't protected by the right to have access to the courts.[1]

### c. Privacy lawsuit Voss never filed

Voss says that he wanted to file another lawsuit under § 995.50 because staff opened a letter from his daughter's therapist, but he chose not to file the lawsuit because it would have

---

[1] Because I am concluding that the state-law privacy claims are frivolous for other reasons, I need not decide whether the letters included information that would be deemed private under § 995.50.

been dismissed for his failure to comply with the notice of claim statute. In the order screening the original complaint, I assumed that a prisoner is actually injured under *Lewis* when conduct by the defendant forecloses any relief on the underlying claim, and that Voss had met that standard because a failure to comply with the notice of claim statute is a jurisdictional defect that cannot be waived. *See Sorenson v. Batchelder*, 2016 WI 34, ¶¶ 24, 46, 368 Wis. 2d 140, 885 N.W.2d 362. *But see Freedom from Religion Found., Inc. v. Lew, 773 F.3d 815, 821* (7th Cir. 2014) (plaintiffs didn't have standing to challenge a law that provided a benefit they never asked for, even if the law was clear that they didn't qualify for the benefit). But regardless whether an actual injury can include the loss of a lawsuit that a plaintiff never files, this claim fails for the same reasons as the previous claim: Voss doesn't have a right to obtain assistance to file an unlimited number of lawsuits, the right to assistance doesn't extend to state-law tort claims, and the underlying state-law claim was frivolous.

### d. Petitions for writs of certiorari

Voss says that he was unable to file petitions for writs of certiorari challenging three conduct reports because he was unable to obtain legal loan extensions before the 45-day filing deadline in § 893.735. This claim doesn't provide fair notice because Voss doesn't explain how the inability to obtain a legal loan prevented him from filing these petitions. As noted above, indigent litigants do not have to prepay the filing fee. Voss also doesn't explain how he would have met the standard for obtaining a writ of certiorari. *See Van Ermen v. DHSS,* 84 Wis.2d 57, 63-64, 267 N.W.2d 17, 20 (1978) (in petition for writ of certiorari, the scope of review is limited to whether the agency acted within its jurisdiction, acted according to law, did not acte arbitrarily or capriciously, and relied on sufficient evidence). So I cannot determine whether Voss lost a chance to pursue a non-frivolous claim.

Even if I assume that Voss needed a legal loan to file his petitions, that his petition was not frivolous, and that his petition falls within the scope of cases protected under *Lewis*, this claim would fail because Voss hasn't alleged an actual injury. Voss admits that he never filed a petition. He says it would have been futile to do so because he failed to obtain a legal loan within 45 days of the deadline for filing a petition. But unlike the requirements for a notice of claim, the filing deadline for a petition for a writ of certiorari is *not* jurisdictional. In fact, Wisconsin courts have held in multiple cases that the 45-day deadline in § 893.735 is subject to equitable tolling. *See State ex rel. Griffin v. Smith*, 2004 WI 36, 270 Wis. 2d 235; 677 N.W.2d 259; *State ex rel. Walker v. McCaughtry*, 2001 WI App 110; 244 Wis. 2d 177, 629 N.W.2d 17; *State ex rel. Johnson v. Litscher*, 2001 WI App 47, 241 Wis. 2d 407, 625 N.W.2d 887. So even if Voss failed to meet the deadline, he could have filed the petition anyway and asked for an extension. By failing to do that, Voss forfeited any claim that he was denied access to the courts.

   e. **Discovery in pending case**

Voss says that he has been unable to conduct discovery in *Voss v. Marathon County*, No. 18-cv-540-jdp (W.D. Wis.), because of refusals by staff to give him legal loans. No. 18-cv-540-jdp is pending in this court, and Voss is engaging in discovery in that case, so this claim has no factual basis. In fact, Voss recently filed a motion to compel. *Id.*, Dkt. 149. In any event, Voss hasn't identified an actual injury. No. 18-cv-540-jdp is ongoing and Voss doesn't allege that any claims have been dismissed because of an inability to conduct discovery. An access-to-courts claim "is not ripe until [the underlying claim] is resolved." *Reese v. Dittman*, No. 16-cv-303-bbc, 2017 WL 1076349, at *2 (W.D. Wis. Mar. 22, 2017).

### 2. Refusal to identify officer names

Under Wis. Stat. § 19.35, a person may request any state public record, subject to various statutory exceptions. But "incarcerated persons" may not request records under § 19.35 unless they are seeking records about themselves or their minor children. Wis. Stat. § 19.32(1c). Voss alleges that Carr has a "policy that DOC employees are to comply with" Wis. Stat. § 19.32; that prison staff refused to give Voss the names of the mailroom staff who opened the mail from his lawyer, the public defender's office, and his daughter's therapist because Carr directed them to comply with § 19.32; and that, as a result, Voss was unable to comply with the requirement in the notice of claim statute to name "the persons involved" in the event giving rise to the claim, Wis. Stat. § 893.82(3). Voss's failure to identify the officers was one of the reasons cited by the state circuit court when dismissing No. 19-cv-387. (The other reason was Voss's failure to serve the notice of claim by certified mail.) And Voss says that one of the reasons he didn't file the lawsuit about the mail from his daughter's therapist being opened was that he wasn't able to identify the officers in his notice of claim. (Again, the other reason was that he didn't serve the notice of claim by certified mail.)

Voss hasn't provided fair notice of this claim because he doesn't describe the process he used to obtain the officer's names. And he admits that prison staff *did* eventually provide the names of the officers who were working in the mailroom on the days that staff opened letters from his lawyer and the public defender's office. Dkt. 18, ¶ 44. This raises the questions of what Carr's policy actually is and whether Voss couldn't obtain the names he needed at first simply because he didn't follow the proper procedure.

It is possible that Voss could provide the missing information in an amended complaint. But it would serve no purpose to give Voss leave to amend because this claim fails even if it is

true that defendant Carr has directed his staff not to provide staff names for litigation purposes. Voss doesn't allege that he was prevented from pursuing a lawsuit solely because he couldn't identify the persons involved. Rather, he says that all of the lawsuits involving the opening of his mail also failed because he couldn't serve the notice of claim by certified mail.

Because I have concluded that Voss didn't have a right to obtain additional legal loans to pay for certified mail, all of these claims would have failed regardless whether Voss had identified the names of the officers involved, so Voss can't show that he was injured by not having those names. *See McCree v. Grissom,* 657 F.3d 623, 624 (7th Cir. 2011) (dismissal of lawsuit not an actual injury if court would have dismissed lawsuit even without alleged constitutional violation); *Harp Advert. Illinois, Inc. v. Vill. of Chicago Ridge, Ill.,* 9 F.3d 1290, 1291 (7th Cir. 1993) (plaintiff doesn't have standing to challenge a rule if he would have suffered the same injury in the absence of the rule). And because I have concluded that Voss's state-law privacy claims were frivolous, his right to have access to the courts wasn't implicated.[2]

### 3. Refusal to allow more time in the law library

Voss contends that DOC's policy governing time in the law library, DAI Policy #319.15.01, has denied his right to have access to courts in three ways: (1) he is unable to adequately research each of his nine cases that are pending in state and federal court; (2) he filed a lawsuit that didn't have merit because he couldn't adequately research his claims before filing it; and (3) he missed a deadline for filing corrections to his deposition.

---

[2] There is another reason that this claim might have failed. In *Lewis v. Casey*, 518 U.S. 343, 354 (1996), the Court rejected the view that "the State must enable the prisoner to discover grievances." Because the claim fails for other reasons, I need not decide whether the rule in *Lewis* includes an attempt by a prisoner to identify a potential defendant.

A threshold problem with these claims is that Voss doesn't seem to be challenging the policy itself but rather individual decisions applying the policy. According to Voss, the policy says that prisoners are entitled to meaningful access to the courts and that the library must be open for a reasonable number of hours to allow prisoners to do research. Dkt. 18, ¶ 148. He doesn't challenge that standard. Instead, he says that his time in the law library has been "curtailed to an unreasonable number of hours in relation to the number of open cases he" has. *Id.*, ¶ 151. He doesn't identify any of the individuals who limited his amount of time in the library, but he says that Carr affirmed the denial of a grievance that Voss filed about that issue. *Id.*, ¶ 152.

I will assume for the purpose of this opinion that Carr's denial of the grievance is sufficient make him "personally involved" in the decisions and thus liable for any constitutional violations. *Estate of Perry v. Wenzel*, 872 F.3d 439, 459 (7th Cir. 2017) ("Individual liability pursuant to § 1983 requires personal involvement in the alleged constitutional deprivation."). But that assumption doesn't help Voss because I conclude none of Voss's allegations about limitations on his law library time fail to state a claim upon which relief may be granted.

      a. Research for pending cases

This claim fails for multiple reasons. First, it doesn't provide fair notice. Voss doesn't explain how much time he is allowed to spend in the library, why the amount of time he receives in the library is inadequate, or how much time he believes he needs. Without that information, it is impossible to determine whether Carr denied Voss's right to have access to the courts.

Second, Voss again assumes that his right to have access to the courts is unlimited. Voss doesn't contend that the amount of time that prisoners are allowed to use the library is unreasonable per se. Rather, he says that he doesn't have enough time in the library to

accommodate all of the cases he is litigating at the same time. But "[p]risoners are not entitled to unlimited time to conduct legal research even if they believe this would improve the quality of their submissions." *Vasquez v. Raemisch*, 480 F. Supp. 2d 1120, 1142 (W.D. Wis. 2007). It was Voss's choice to litigate so many cases simultaneously. That choice doesn't trigger a corresponding duty on DOC to allow Voss to use the library whenever he wishes. *See Johnson v. Moore*, 948 F.2d 517, 521 (9th Cir. 1991) ("Prison officials must regulate the time, manner, and place in which library facilities are used.").

Third, Voss doesn't identify an actual injury that he suffered as a result of limited library access. The limitation itself is not an injury; Voss must point to a specific way in which the limitation hindered his lawsuit. *Owens v. Evans*, 878 F.3d 559, 565 (7th Cir. 2017); *McCree*, 657 F.3d at 624; *Pratt v. Tarr*, 464 F.3d 730, 731–32 (7th Cir. 2006). Because he says that all of the cases remain pending, he hasn't suffered an injury that would support an access-to-courts claim. *See Marshall v. Knight*, 445 F.3d 965, 969 (7th Cir. 2006) (plaintiff may not base access-to-courts claim on speculative future harm).

  b. **Dismissed lawsuit**

This claim is difficult to follow, but I understand Voss to be contending that the time restrictions placed on him in the law library prevented him from discovering that *Voss v. Carr*, No. 19-cv-776-jdp (W.D. Wis.), didn't have merit before the court dismissed it. In No. 19-cv-776-jdp, Voss asserted a claim that Carr violated his right to have access to the courts by refusing to provide him copies of various medical publications, which Voss said he needed to challenge his criminal convictions in state court. I dismissed the case for multiple reasons: (1) Voss wasn't entitled to additional legal research after he declined representation by a public defender; (2) the Constitution doesn't require prisons to stock libraries with

particular medical publications; and (3) Voss didn't explain how the medical publications would support his postconviction challenge. *Id.*, Dkt. 11. Voss alleges that he never would have filed No. 19-cv-776-jdp if he had known "that he forfeited the right to bring an access-to-court claim when he fired his appellate attorney," and that he would have realized his error if he had been allowed more time in the law library. Dkt. 18, ¶ 160.

This claim is both factually and legally off base. Even after I told Voss the reasons that his access-to-courts claim failed—and cited binding legal authority—he pressed ahead with his case, filing a 38-page motion for reconsideration, which I then denied. But even if I assume that Voss would have refrained from filing No. 19-cv-776-jdp if only he could have done more research, this claim is based on a misunderstanding of the right to have access to the courts. The Constitution gives prisoners the right to meaningful access *to* the courts, but Voss is trying to turn that right on its head. There is no constitutional right to be *prevented* from filing lawsuits that don't have merit. No one forced Voss to file No. 19-cv-776-jdp. If he wasn't sure whether his allegations stated a claim, he could have waited to file his lawsuit or he could have devoted more of his law library time to researching that case instead of the other cases he was litigating. But Voss wasn't denied access to the courts, so this claim fails.

    c. **Missed deadline**

Voss contends that he missed a deadline for objecting to a deposition transcript in *Voss v. Kauer*, No. 18-cv-848-jdp (W.D. Wis.), another case that Voss filed in this court, because he didn't have enough time in the law library. Specifically, he says that he was unaware that Federal Rule of Civil Procedure 30(e) was limited to correcting errors rather than offering new evidence, and, if he had known that, he could have met the deadline.

Again, Voss doesn't point to an injury. He doesn't identify any errors in the deposition transcript, much less explain how any errors harmed his case. Voss dismissed No. 18-cv-848-jdp without prejudice with leave to reopen the case within six months. Because I did not dismiss any claims as a result of Voss's deposition and Voss's voluntarily dismissal was unrelated to Voss's missed deadline, he hasn't alleged an actual injury.

**B. Equal protection**

Voss contends that Wis. Stat. § 893.82(5) (the requirement to serve a notice of claim by certified mail), DAI Policy 309.51.01 (the legal loan policy), and Wis. Stat. § 19.32(1c) (the restriction on an "incarcerated prisoner" from obtaining public records) all violate the Equal Protection Clause. He contends that § 893.82(5) and the legal loan policy both discriminate against the poor and that § 19.32(1c) discriminates against prisoners. Classifications based on wealth or incarceration are permissible so long as they are rationally related to a legitimate interest. *See L.D.R. by Wagner v. Berryhill*, 920 F.3d 1146, 1153 (7th Cir. 2019); *Johnson v. Daley,* 339 F.3d 582, 586 (7th Cir. 2003). This standard of review "sets the legal bar low" and requires the plaintiff "to eliminate any reasonably conceivable state of facts that could provide a rational basis for the classification." *D.B. ex rel. Kurtis B. v. Kopp*, 725 F.3d 681, 685–86 (7th Cir. 2013) (internal quotations omitted).

**1. Certified mail requirement**

Section 893.82(5) does not discriminate against the poor. The statute requires *all* notices of claim to be served by certified mail, regardless of a person's wealth. It is true that the certified mail requirement is a greater burden on a poor litigant than a wealthy one. But that shows only a *disparate impact* on the poor, not a discriminatory intent, and disparate impacts do not violate the Equal Protection Clause. *See Washington v. Davis,* 426 U.S. 229, 239 (1976);

15

*see also Crites v. Lakin*, 15-cv-677-JPG, 2015 WL 4466145, at *4 (S.D. Ill. July 21, 2015) ("What [the plaintiff] seems to be alleging is that indigent inmates are worse off than other inmates because of the jail's payment requirements, but that is an allegation of disparate impact rather than disparate treatment, and 'an assertion of disparate . . . impact does not state an equal protection claim.'" (quoting *Parker v. Lyons*, 757 F.3d 701, 707 (7th Cir. 2014)). The court of appeals has gone so far as to say that "there is no constitutional problem" with state-imposed expenses on litigation even if "those expenses may make litigation impractical if not impossible for some persons." *King v. Marion Circuit Court*, 868 F.3d 589, 592 (7th Cir. 2017). So the certified mail requirement in the notice of claim statute doesn't violate the Equal Protection Clause.

2. **Legal loan policy**

The legal loan policy does not discriminate against the poor either. In fact, it discriminates *in favor* of the poor: prisoners who can afford to fund their own litigation aren't entitled to legal loans. Although Voss frames this claim as one about indigency, his real claim appears to be that the policy discriminates against prisoners based on the type of litigation they are involved in. Specifically, he says that the caps on legal loans do not apply to certain attacks on criminal convictions, certain cases in which the prisoner is the defendant, and cases in which the prisoner is at risk of serious bodily harm. Dkt. 18, ¶¶ 19, 205, 209.

If that is Voss's claim, it fails. The cases exempted from the legal loan cap are those that involve the most serious consequences, such as a criminal conviction or a serious physical injury. It would be rational for DOC to conclude that prisoners litigating that type of case should be subjected to fewer restrictions on their legal loans. Because a rational basis is all that is required, I will dismiss this claim.

### 3. Open records

Voss doesn't clearly explain whether he is challenging the constitutionality of § 19.32(1c) itself or simply a DOC policy that invokes § 19.32(1c). Either way, this claim fails for multiple reasons. First, this claim arises out of staff's alleged refusal, at least initially, to provide the names of officers whom Voss wanted to include on three notices of claims. As discussed above, the claims that Voss was pursuing in those notices fail for other reasons, so Voss didn't suffer an injury as a result of his inability to obtain the names.

Second, although it does not appear that Wisconsin courts have considered whether § 19.32(1c) violates the Equal Protection Clause, other courts have considered restrictions placed on open records requests filed by prisoners. These courts have consistently upheld such restrictions, reasoning that the state has a legitimate interest in preserving scarce government resources and that it is rational to believe that prisoners are more likely to abuse the open records process with burdensome and frivolous requests and to use the information they obtain for improper purposes. *See, e.g., Holt v. Howard*, 806 F.3d 1129, 1132–33 (8th Cir. 2015); *Giarratano v. Johnson*, 521 F.3d 298, 305 (4th Cir. 2008); *Entler v. McKenna*, No. C11-5081 RBL/KLS, 2011 WL 4368367, at *3 (W.D. Wash. July 19, 2011), *report and recommendation adopted*, No. C11-5081 RBL/KLS, 2011 WL 4368729 (W.D. Wash. Sept. 19, 2011), *aff'd*, 487 F. App'x 417 (9th Cir. 2012); *Brown v. Wetzel*, No. 318 M.D. 2015, 2016 WL 4709887, at *3–4 (Pa. Commw. Ct. Sept. 9, 2016), *aff'd*, 644 Pa. 494, 177 A.3d 200 (2018); *Proctor v. White Lake Twp. Police Dep't*, 639 N.W.2d 332, 340 (Mich. Ct. App. 2001). That reasoning is consistent with *Lewis v. Sullivan*, 279 F.3d 526, 528–29 (7th Cir. 2002), in which the court upheld limitations on prisoner lawsuits because "[p]risoners have ample time on their hands and have demonstrated a proclivity for frivolous suits to harass their accusers, the guards, and

others who caused or manage their captivity." So I conclude that § 19.32(1c) doesn't violate the Equal Protection Clause.

CONCLUSION

Voss is a litigious individual who has filed numerous lawsuits about his treatment in jail and prison, challenging many aspects of his conditions of confinement. And now he is filing lawsuits about his lawsuits. Voss is entitled to file those lawsuits, but the state is not required to subsidize an unlimited number of them or to give Voss special treatment simply because he is litigious. Voss's allegations do not state a claim under the right to have access to the courts or the Equal Protection Clause, so I will dismiss this case with prejudice for Voss's failure to state a claim upon which relief may be granted.

ORDER

IT IS ORDERED that:

1. This case is DISMISSED with prejudice for plaintiff Dante Voss's failure to state a claim upon which relief may be granted.

2. Because this case is being dismissed for one of the reasons listed in 28 U.S.C. § 1915(g), the clerk of court is directed to record a "strike." *See Turley v. Gaetz*, 625 F.3d 1005, 1008–09 (7th Cir. 2010). If Voss receives three "strikes" under

§ 1915(g), he will not be able to proceed in future cases without prepaying the full filing fee unless he is in imminent danger of serious physical injury.

3. The clerk of court is directed to enter judgment in favor of defendants and close this case.

Entered March 13, 2020.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge